UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HECTOR SOLORIO,

                Plaintiff,

    -v-

ASPLUNDH TREE EXPERT CO., *et al*,

                Defendants,

    -v-

SAMAR TREE SERVICE, INC.,

                Third-Party Defendant.

No. 02 Civ. 8035 (RJS)
<u>ORDER</u>

---

<u>RICHARD J. SULLIVAN</u>, District Judge:

On December 3, 1999, Plaintiff Hector Solorio ("Plaintiff") was trimming trees while working aloft in the bucket of a 1978 Asplundh model LR-50 aerial lift (the "lift") when the cables of the lift broke.  (*See* Defs.' 56.1 ¶¶ 1-2, 20, 24-26.)[1]  Plaintiff brings this diversity action against the alleged manufacturers of the lift, Asplundh Tree Export Co., Asplundh Tree Export Company, and Asplundh Manufacturing Division, and the alleged successor corporation, Altec Industries, Inc. (collectively, "Defendants"), asserting common law claims for negligence, strict

---

[1]  The facts recited in this Order are for purposes of background with respect to Defendants' summary judgment motion only, and are taken from the pleadings, the Parties' respective Local Rule 56.1 statements, and affidavits and exhibits submitted by the Parties.  The facts are undisputed unless otherwise noted.  Where only one Party's 56.1 Statement is cited, the facts are taken from that Party's statement, and the other Party does not dispute the fact asserted or has offered no admissible evidence to conflict with that fact.

liability, and breach of warranty.[2]   Before the Court is Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## I. LEGAL STANDARDS

### A. Summary Judgment

The standards for summary judgment are well settled.   The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005).  Pursuant to Rule 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Matican v. City of New York*, 524 F.3d 151, 154 (2d Cir. 2008).  "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor."  *Beyer v. County of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008) (quoting *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (noting that summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

### B. Admissibility of Evidence

On a motion for summary judgment, it is appropriate for the Court to decide questions regarding the admissibility of evidence, including expert opinion evidence.  *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997).  This is so because in deciding a summary judgment motion, a

---

[2]  Defendants subsequently impleaded Plaintiff's employer, Samar Tree Service, Inc., as a Third-Party Defendant, on the theory that the accident was caused by Samar Tree's failure to inspect and maintain the lift.

"district court properly considers only evidence that would be admissible at trial." *Nora Beverages, Inc. v. Perrier Gr. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). Evidence proffered by any expert must therefore be evaluated under Rule 702 of the Federal Rules of Evidence before it is considered in a ruling on the merits of a summary judgment motion. If expert testimony is excluded as inadmissible under Rule 702, the summary judgment determination is made on a record that does not include that evidence. *Raskin*, 125 F.3d at 66-67. The burden is on Plaintiff to prove by a preponderance of the evidence that Hyatt's testimony is admissible. *See United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007) ("[T]he proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied."); *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 n.10 (1993) ("These matters should be established by a preponderance of proof.").

The Supreme Court has held that the Federal Rules of Evidence "assign to the trial judge the task of ensuring that an expert's testimony both rests on a *reliable* foundation and is *relevant* to the task at hand." *Daubert*, 509 U.S. at 597 (emphasis added). This "gatekeeping" function applies to scientific expert testimony as well as to technical and other specialized fields of knowledge such as the "discipline of engineering," which is the type of expert testimony at issue in this case. *See Kumho Tire Co., v. Carmichael*, 526 U.S. 137, 147-48 (1999). However, as a threshold matter, the Court must first examine whether the proposed witness *qualifies* as an expert — that is, whether the proposed witness has the specialized knowledge, skill, experience, training, or education that would assist the trier of fact in understanding the evidence or deciding on particular issues in the case. *See* Fed. R. Evid. 702 (requiring a witness to be "qualified as an

expert by knowledge, skill, experience, training or education"); *Aspex Eyewear, Inc. v. Altair Eyewear, Inc.*, 485 F. Supp. 2d 310, 318 (S.D.N.Y. 2007) (citing *Baker v. Urban Outfitters, Inc.*, 254 F. Supp. 2d 346, 352 (S.D.N.Y. 2003)); *see also Nora Beverages*, 164 F.3d at 746 (2d Cir. 1998).

## II. DISCUSSION

In this case, the inadmissibility of the proffered testimony of Plaintiff's proposed expert, Jeffrey D. Hyatt ("Hyatt"), is dispositive of Defendants' motion for summary judgment.  The Court held a hearing on Hyatt's qualifications on January 30, 2009 (the "January 30 Hearing"), and heard oral argument on the admissibility of Hyatt's proposed expert testimony on March 10, 2009 (the "Oral Argument").

The Court expresses serious reservations about Hyatt's qualifications.  As became clear at the January 30 Hearing, Hyatt has never been in a position to critique the *overall* design of a product.  Hyatt's specialized knowledge and experience is limited to *wire rope analysis*; as Plaintiff's counsel conceded at the January 30 Hearing, Hyatt "has no insight into the design of this aerial lift other than what he knows about rope."  (January 30 Hearing Tr. at 90:25-91:2.) However, Hyatt is not being offered to testify solely as a wire rope expert; according to his Rule 26 Report, he will testify to the fact that the "lift contained *hidden defects*, which allowed the upper boom and bucket to suddenly and catastrophically fall under foreseeable circumstances." (McHugh Decl. Ex. P (emphasis added).)[3]  The fact that approximately ninety percent of Hyatt's work involves preparation for litigation also casts doubt on his qualifications.  (McHugh Decl.

---

[3]  At Oral Argument, Plaintiff's counsel conceded that Hyatt was not qualified to testify about certain hidden defects, such as the lack of a safety device that would have prevented a catastrophic free fall.  (*See* Oral Argument Tr. at 31:5-12.)

Ex. Q at 112; January 30 Hearing Tr. at 64:1-13); *cf. Zaremba v. Gen. Motors Corp.*, 360 F.3d 355, 359-60 (2d Cir. 2004) (noting that the district court's analysis under *Daubert* seemed "almost superfluous" given that the proposed expert's "employment has consisted entirely of consulting for purposes of litigation, primarily as an accident reconstructionist"). Further, the Court finds that Hyatt's background evinces a general lack of qualification to testify as an expert on a subject matter involving engineering principles, given that: (1) Hyatt has a degree in "mechanical engineering *technology*" not "mechanical engineering" (McHugh Decl. Ex. Q at 92); (2) Hyatt failed mathematical courses in high school and in college (*id.* at 84-85); (3) Hyatt only has an engineer-in-training certificate that he obtained by passing the examination with the minimum score (*id.* at 97, 44); (4) Hyatt is not a professional engineer, and in fact, failed the professional engineering examination in October 2008 (January 30 Hearing Tr. at 70:20-71:4); and (5) Hyatt has not written any peer-reviewed articles, participated in the drafting of any standards or regulations, designed a product that went to market, or received any patents (McHugh Decl. Ex. Q at 18, 91, 142-43; *see also* January 30 Hearing Tr. at 72:8-22).

The Court does not deem it necessary to rule on Hyatt's qualifications in this case, however, because considering the non-exhaustive list of factors provided by the text of Rule 702 and by the Supreme Court in *Daubert*, the Court holds that Hyatt's proposed testimony falls far short of being sufficiently reliable.[4] In making this determination, the Court finds the analysis in

---

[4]  The Second Circuit has instructed courts that:

> In assessing reliability, the district court should consider the indicia of reliability identified in Rule 702, namely, (1) that the testimony is grounded on sufficient facts or data; (2) that the testimony is the product of reliable principles and methods; and (3) that the witness has applied the principles and methods reliably to the facts of the case. But these criteria are not exhaustive. *Daubert* enumerated

*Rypkema v. Time Mfg. Co.*, 263 F. Supp. 2d 687 (S.D.N.Y. 2003) to be instructive.  In that case, finding the proffered expert testimony to be unreliable, the Honorable Robert W. Sweet, District Judge, noted that:

> [The proposed expert] has not reconstructed the accident, and has not proposed an alternative design for the [allegedly deficient] subject latch.  Nor has he evaluated the feasibility of an alternative latch, given any opinion concerning how an alternative latch would have prevented the accident, nor shown the use of an alternative latch in the marketplace. . . .
>
> [The expert] has done no engineering work, or considered what problems might be encountered in the field, with the [proposed] alternative latches. . . . While conjecture by a qualified expert is worthy of careful attention, the courtroom is not the place for scientific guesswork, even of the inspired sort.  The axiom that law lags behind science but does not lead it, applies equally to proposed engineering innovations in a design defect case. . . . Thus, to advance a reliable hypothesis, an expert is required to ascertain feasibility, to test alternative designs, and to address the engineering factors and tradeoffs that go into the design of a product for distribution in the marketplace.

*Rypkema*, 263 F. Supp. 2d at 692-93 (internal citations and quotation marks omitted).

An analogous critique is applicable to Hyatt.  Here, Hyatt (1) has not reconstructed the accident (*see* McHugh Decl. Ex. Q at 50); (2) has not inspected the remaining parts of the lift (*see id.* at 66); and (3) perhaps most significantly, has failed to offer any alternative designs, point to any alternative designs that existed in the marketplace during the relevant time,[5] conduct

---

a list of additional factors bearing on reliability that district courts may consider: (1) whether a theory or technique has been or can be tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the technique's known or potential rate of error and the existence and maintenance of standards controlling the technique's operation; and (4) whether a particular technique or theory has gained general acceptance in the relevant scientific community.

*United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007) (internal citations and quotation marks omitted).

[5] Plaintiff points to three patents in the record, only two of which existed in 1978 when the lift was manufactured.  (*See* McHugh Decl. Ex. Y.)  However, neither Plaintiff nor Hyatt has offered any evidence to demonstrate (1) whether these patents existed in the *marketplace* in 1978; (2) whether these patents were actually used to design products similar to the lift at issue here; and (3) if not, what modifications would be necessary to make the designs contemplated in these patents compatible with such a lift.

any testing of alternative designs, or consider what problems might be encountered by such alternative designs, such as what problems would arise by using a different wire rope in the lift (*see, e.g.*, *id.* at 91).  *Cf. Brooks v. Outboard Marine Corp.*, 234 F.3d 89, 92 (2d Cir. 2000) (upholding the exclusion of an expert who, among other "shortcomings," "never attempted to reconstruct the accident and test his theory").   Courts in this District have found that "[a]dherence to engineering standards of intellectual rigor almost always requires testing of a hypothesis if the expert cannot point to an existing design in the marketplace"  *Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 76 (S.D.N.Y. 2001); *see also id.* at 77 (noting that testing "ensures that the focus of the jury's deliberation is on whether the manufacturer could have designed a safer product, not on whether an expert's proposed but untested hypothesis might bear fruit").[6]

---

[6]  At Oral Argument, in explaining these failures, Plaintiff's counsel relied almost entirely on *Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102 (N.Y. 1983), arguing that "proposing a safer alternative design . . . is one factor . . among several." (Oral Argument Tr. at 13:12-15.)  Plaintiff's reliance on *Voss* is misplaced.  *Voss* addresses what is required to establish a *prima facie* case in strict products liability for design defect under New York law, *see Voss*, 59 N.Y.2d at 107, and speaks neither to the *Daubert* inquiry, nor to the admissibility of evidence in general.  Further, Plaintiff's reliance on *Voss* for the proposition that the existence of a feasible alternative design is not required under New York law is contradicted by the language of *Voss* itself, *see Voss*, 59 N.Y.2d at 108 ("The plaintiff, of course, is under an obligation to present evidence that the product, as designed, was not reasonably safe because there was a substantial likelihood of harm and it was feasible to design the product in a safer manner."), by courts in this District interpreting *Voss*, *see, e.g.*, *Rypkema v. Time Mfg. Co.*, 263 F. Supp. 2d 687, 692 (S.D.N.Y. 2003) ("Under New York law, in a design defect case a plaintiff is required to prove the existence of a feasible alternative which would have prevented the accident." (citing *Voss*)), and by courts in New York state interpreting *Voss*, *see, e.g.*, *Liz v. William Zinsser & Co.*, 676 N.Y.S.2d 619, 620 (2d Dep't 1998) ("Finally, the court erred in not dismissing those causes of action predicated on a design defect theory, as the plaintiffs failed to demonstrate that it was feasible to design the product in a safer manner." (citing *Voss*)).  Plaintiff concedes that Hyatt has neither proposed an alternative design for the lift at issue in this case nor is qualified to do so.  (*See* Defs.' 56.1 ¶ 94; *see also* Oral Argument Tr. at 30:9-10 ("Does Mr. Hyatt have the qualifications to testify as to an alternative design?  Probably not.  I've conceded that.").)  Accordingly, even if the Court were to deem Hyatt's testimony admissible, Defendants would still be entitled to summary judgment in this case, as Plaintiff has failed to demonstrate a necessary element of a *prima facie* case alleging design defect.

At Oral Argument, Plaintiff's counsel narrowed the scope of Hyatt's proposed testimony from what was presented in Hyatt's Rule 26 Report, representing that Hyatt would only testify in regard to two distinct issues: (1) that the wire rope did not meet the three to one "safety factor" required by the relevant 1969 ANSI code, and (2) that the "D/d ratio" of the lift was "inappropriate."  (*See* Oral Argument Tr. at 31:15-23.)[7]  However, even so narrowed, Hyatt's testimony is not sufficiently reliable.  Hyatt admitted during his deposition that he did not perform *either* of these calculations until *after* submitting his Rule 26 Report that alleged "hidden defects" in the lift.  (*See* McHugh Decl. Ex. Q at 17-18.)[8]  Further, Hyatt did not examine the remaining parts of the lift, including the sheave (*see id.* at 66).  *Cf. Kumho*, 526 U.S. at 155 (expressing "concerns" given that the expert "had inspected the tire itself for the first time the morning of his first deposition, and then only for a few hours").  Defendants contend that as a result, Hyatt improperly calculated the sheave pressure by selecting the wrong metal. (*See* Defs.' Mem. at 17.)  Defendants further argue that in calculating the "safety factor," Hyatt utilized the incorrect methodology; specifically, that Hyatt used the "maximum hydraulic pressure" of the lift rather than the "rated load" of the lift (*see* Defs.' Mem. at 18), and that Hyatt used the "minimum acceptance strength" rather than the "nominal strength" (*see* Defs.' Reply at 5).  Plaintiff's response  — "[t]hus, there is a factual dispute as to the input data, but no disagreement that the methodology is based upon sound, tested[,] and accepted engineering

---

[7]  "Safety factor" is defined as "the ratio of the nominal strength to the total working load."  (*See* Defs.' Reply at 5 (quoting the *Wire Rope Users Manual*).)  The "D/d" ratio involves the relationship between the wire rope and the sheave.  (*See* McHugh Decl. Ex. Q at 16; *see also* Oral Argument Tr. at 31:20-32:10.)

[8]  Specifically, although Hyatt's Rule 26 Report, alleging a "hidden defect" in the lift, is dated January 22, 2007 (*see* McHugh Decl. Ex. P), Hyatt testified that he did not make any calculations until "two weeks" before his deposition, which was held on August 21, 2007 (*see* McHugh Decl. Ex. Q at 17).

principles" (Pl.'s Opp'n at 6) — misconstrues Plaintiff's burden in proffering expert testimony. As noted, "the proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied." *Williams*, 506 F.3d at 160.

The Court finds that Plaintiff has failed to meet this burden in proving that these two calculations are sufficiently reliable, given that: (1) by reaching a conclusion *before* performing the necessary calculations, Hyatt arrived at his conclusion using the *reverse* of the scientific method; (2) Hyatt made his calculations without examining the remaining parts of the lift in question; and (3) not only has Plaintiff failed to offer any evidence in support of Hyatt's testimony that his "input data" for the various relevant formulas is correct, but the evidence that is in the record actually suggests the opposite; for example, the text of the relevant ANSI standard clearly states that the "rated load" shall be used in determining the safety factor (*see* McHugh Decl. Ex. AA at 9).   In sum, the Court finds that Hyatt's methodology in performing these two calculations does not provide the basis for the kind of reliable expert testimony contemplated by Rule 702 and the *Daubert* line of cases.[9]

Accordingly, the Court holds that Plaintiff has failed to meet his burden in proving that Hyatt's proposed testimony is sufficiently reliable under Rule 702 and *Daubert*.   So finding,

---

[9]  The Court also takes into consideration the various indicia of sloppiness and carelessness in Hyatt's proposed expert opinion, as evinced by the Rule 26 Report, *inter alia*, (1) indicating that Plaintiff has died when in fact he is still alive (*compare* McHugh Decl. Ex. P. ("The death of Mr. Solorio was directly caused by Asplundh's violation of the standard of care defined by published industry standards . . . ."), *with* Compl. ¶ 24 ("On or about December 3, 1999, plaintiff sustained severe, painful, disfiguring and permanent personal injuries and trauma . . . when he fell to the ground after the Lift in which he was working collapsed."); (2) citing another plaintiff's medical records as a reference to this case (McHugh Decl. Ex. Q at 73); (3) copying the references from a previous expert report rather than conducting his own independent literature search (*id.* at 165-166); and (4) failing to review all of these references that were copied from a previous expert report (*id.* at 73-74).

there is no evidence in the record to support Plaintiff's theory of strict liability, specifically, that there is a design defect in the lift.  *Cf. Brooks*, 234 F.3d at 92 ("Having determined that the district court acted within its discretion in excluding [the expert's] testimony, the plaintiff has no evidence in the record to support his theory that the motor had a design defect which caused the accident or increased its severity.  As a result, summary judgment was properly granted."); *Guarascio v. Drake Assocs. Inc.*, 582 F. Supp. 2d 459, 463 (S.D.N.Y. 2008) (noting that, "[a]t a minimum," "in order to make out a prima facie case (and to raise a genuine issue of fact when confronted with a motion for summary judgment)" for defective design, a plaintiff "must present some admissible evidence that there exists a *technologically feasible* and *commercially practicable* alternative design" (emphasis added)).  Plaintiff's claim for negligence must fail for the same reason: there is no evidence in the record to support a finding that there was any defect in the lift.  *See Kosmynka v. Polaris Indus., Inc.*, 462 F.3d 74, 86 (2d Cir. 2006) ("Both negligence and strict products liability (under New York Law) require a showing of a product 'defect.' . . .  Both claims entail a showing that a product defect caused the injury; but to show negligence, the plaintiff must also prove that the injury caused by the defect could have been reasonably foreseen by the manufacturer."); *Colon*, 199 F. Supp. 2d at 83 ("Courts have noted that, for the purposes of analyzing a design defect claim, the theories of strict liability and negligence are virtually identical."); *see also Saladino v. Stewart & Stevenson Servs., Inc.*, No. 01 Civ. 7644 (SLT), 2007 WL 4285377, at *5 (E.D.N.Y. Dec. 3, 2007) ("New York courts have treated the differences between negligence and strict liability as inconsequential.").  Plaintiff concedes this point in his brief.  (*See* Pl.'s Opp'n at 7 ("[F]or purposes of analyzing a design

defect claim, the differences between theories of strict liability and negligence are insignificant.").)[10]

### III. CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion for summary judgment. The Clerk of the Court is respectfully directed to terminate the motions located at docket numbers 38 and 39 and to close this case.

SO ORDERED.

Dated:      March 20, 2009
            New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

---

[10] Plaintiff, in his opposition papers, does not dispute Defendants' argument that his claims for breach of warranty are time barred under the relevant statute of limitations. Claims for breach of implied and express warranties in New York are governed by a four-year statute of limitations, measured from the tender of delivery of the goods. N.Y. U.C.C. § 2-725(1); *see, e.g., Heller v. U.S. Suzuki Motor Corp.*, 64 N.Y.2d 407, 410 (N.Y. 1985). The statute of limitations for a breach of warranty claim, whether implied or express, begins to run at the time the product is placed in the stream of commerce or at the time of the original sale of the good by the manufacturer, regardless of when the injury was sustained. *See Schrader v. Sunnyside Corp.*, 747 N.Y.S.2d 26, 28 (2d Dep't 2002). There is no dispute that Defendants originally sold the lift in 1978. (*See* Defs.' 56.1 ¶ 4.) Accordingly, the statute of limitations for Plaintiff's breach of warranty claims expired in 1982. The Court thus grants Defendants' summary judgment motion as pertains to Plaintiff's claims for breach of warranty.